of such income to be ascertained by reference to the income upon which the corporation is required to pay a tax to the United States, has been recently upheld in the case of *Underwood Typewriter Co. v. Chamberlain*, 254 U. S., 113, 41 Sup. Ct., 45; 65 L. Ed., 165. In the light of the principles announced in the cases cited and therein applied to state income tax laws not differing essentially in meaning, scope, and effect from the act here involved, we are satisfied that no adequate consideration has been suggested upon which to base the conclusion that the enforcement of the act will burden interstate commerce, abridge the privileges and immunities of nonresident citizens, deny the equal protection of the laws, or deprive plaintiffs of due process of law, in derogation of constitutional guaranties.

For the reasons indicated, the temporary injunction is dissolved, the prayer for a permanent injunction denied, and the complaint dismissed.

-----

## 11074

### EX PARTE AMERICAN FERTILIZING CO.

#### (115 S. E., 236)

1. Estoppel—Statement of Amount Due on Note and Mortgage Held not to Estop Payee From Subsequently Asserting That Mortgage Also Secured Other Notes.—A statement by one receiving a payment for a bank on a note secured by a mortgage to the effect that a certain balance remained unpaid *held* not to estop payee from asserting that the mortgage, also secured other notes, particularly in view of the fact that at the time of the statement the rights of all parties had accrued and prejudice could not have resulted therefrom.

2. Mortgages—May Secure Future Advances.—Mortgages may secure future advances.

3. Mortgages—Mortgage Securing Indebtedness That "May be Due" Contemplates Future Indebtedness; "Due."—A mortgage securing a note and any other amount that "may be due" *held* to contemplate future advances rather than those presently due; "due" not necessarily implying a debt already matured, but rather owing irrespective of the time of payment.

4. MORTGAGES—INTENTION OF PARTY CONTROLLING.—The intention of the parties is controlling, and must be determined from the instrument itself, and it is the purpose of construction to ascertain that intention; to this end words should be given their natural and ordinary meaning.

5. EVIDENCE—TESTIMONY OF DEBT INTENDED TO BE SECURED BY MORTGAGE HELD INCOMPETENT.—Testimony of the debt intended to be secured by a mortgagor and mortgage *held* incompetent, as the intention of the parties must be determined from the language of the instrument itself.

6. MORTGAGES—MORTGAGE SECURING NOTE AND "ANY AMOUNT THAT MAY BE DUE" HELD AS AGAINST THIRD PARTIES TO SECURE SUBSEQUENT NOTES.—A mortgage securing a note and "any amount that may be due" *held,* as against third person required to take notice of the instrument, to secure subsequent notes, notwithstanding language in the defeasance law referring to the "sum hereinabove mentioned" and language referring to "the obligation above set forth" and to the "said debt."

Before L. D. LIDE, Special Judge, Marlboro, August, 1922.  Affirmed.

Petition by the American Fertilizing Company to obtain priority of their lien over other liens in receivership proceedings, in which H. L. McColl and another were made receivers of the Mutual Savings Bank.  From a decree dismissing the petition, petitioner appeals.  Affirmed.

The following is the decree of the Circuit Court, omitting the caption:

On January 16, 1920, G. S. Easterling executed to Mutual Savings Bank, for money borrowed at that time, his promissory note for $1,484.00, maturing October 16, 1920. At the same time he executed a chattel mortgage to the bank, covering, among other things, the crops to be raised during 1920 on a tract of land in Marlboro County therein described.  The mortgage recites the note above mentioned and then uses the following language:  "Now, in order to secure the payment of said note and any other amount that I may be due the said Mutual Savings Bank, either by account or otherwise"—and then follows the granting clause.

The mortgage was drawn on a printed form, and the words quoted are in print. The defeasance clause refers to "the sum hereinabove mentioned." The clause providing for sale in the event of default refers to "the obligation above set forth and mentioned," and the "said debt." The mortgage was duly recorded January 17, 1920. At the time the mortgage was given, Easterling owed no other debts to the bank.

About March 1, 1920, American Fertilizing Company, through its sales agent, Mr. D. A. Tillman, sold Easterling a lot of fertilizers, a part of which were used by him on the farm covered by the mortgage, and the remainder on a farm in Chesterfield County. Easterling gave his unsecured note for the fertilizers. Mr. Tillman testifies that at the time he made the sale Easterling told him that he had given a crop note and mortgage to the bank. It does not appear that he examined the record or made further inquiry, but this is immaterial, as the parties are, of course, bound by the record.

On June 17, 1920, Easterling borrowed additional money from the bank, giving his promissory note for the same, the amount being $700.00, maturing four months after date; and on August 2, 1920, he procured a third loan from the bank, for which he gave his promissory note, the amount being $500.00, maturing October 18, 1920. Neither of these notes make any reference to the mortgage. Easterling says he thinks one of these amounts was for "soda" and the other for "feed," from which it may be inferred that both amounts were borrowed for agricultural supplies for his farm or farms.

On October 2, 1920, Easterling paid to the bank the sum of $500.00, which was credited on the $1,484.00 note. On November 8, 1920, the bank failed, and H. L. McColl and E. P. Miller were duly appointed receivers, and they are now in the discharge of their duties as such.

Easterling failed to pay the full amount of the note given by him to the fertilizing company, and, being pressed by the company for payment, he gave its agent warehouse receipts for 14 bales of cotton on or about February 7, 1921. This cotton was raised in 1920 on the land described in the mortgage, and at the time he delivered the receipts he told the agent that he owed the bank a balance on the $1,484.00 note, and that the receipts were being delivered on condition that the company would pay the balance out of the proceeds of the cotton. At that time the receipts were not indorsed. Nothing was then said by Easterling about the other two notes to the bank. Subsequently Easterling, with the consent of the company, sold five bales of the cotton, and paid the proceeds thereof to Mr. H. R. Fletcher, who was in the employment of the receivers. The amount appears to have been $343.00, and was credited on the $1,484.00 note by Mr. Fletcher. This note also shows two other credits dated June 25, 1921, $253.07 and $44.94, which were amounts on deposit to Easterling's credit in the bank. Easterling says that at the time he paid the proceeds of the five bales of cotton Fletcher told him that this left a balance of approximately $400.00 on the note and mortgage.

On November 29, 1921, Easterling endorsed the warehouse receipts for the remaining nine bales of cotton, but it was still understood between him and the company that the balance due on the $1,484.00 note should be paid out of the proceeds of the cotton. Early in December, 1921, Easterling and Mr. Tillman, acting for the company, called on Mr. McColl, one of the receivers, and offered to pay the balance due on the $1484.00 note, and asked that the mortgage be cancelled. Mr. McColl informed them that the mortgage also secured the $700.00 note and the $500.00 note, and that he could not cancel the mortgage unless these notes were also paid, the full amount thereof being due.

Thereupon the company filed its petition herein, praying that the receivers be required to cancel the mortgage in question, upon payment of the balance due upon the $1,484.00 note. The receivers answered, alleging that the mortgage secures all three of the Easterling notes, and that they are entitled to the nine bales of cotton, the warehouse receipts for which were held by the company. The exact amount due the company does not appear in the record, but it is admitted that the nine bales of cotton in question would not be sufficient to pay it.

The case was referred to H. J. Riley, Esq., as Referee, to take the testimony. The testimony was duly taken by him, and the facts above stated are shown by the admissions of counsel incorporated in the record and the uncontradicted evidence.

The petitioner contends that the receivers are estopped to claim that the mortgage secures any notes other than the $1,484.00 note because of the statements made by Mr. Fletcher in reference to the balance due. I do not think, however, that there is any element of estoppel in the case. At that time the rights of all the parties had accrued, and neither the fertilizer company nor Mr. Easterling were prejudiced by reason of Mr. Fletcher's statements.

The warehouse receipts for the cotton in question were issued by the Bennettsville Warehouse Company or its receiver. They were not State Warehouse receipts, and it is not contended that these receipts passed title free of liens under the State Warehouse Act.

It is suggested by counsel for the receivers that the Court might change the application of the payments made subsequent to the receivership in the interest of the creditors of the bank. The record, however, shows that counsel agreed that the payments were made on the $1,484.00 note; and the pleadings raise no issue as to their application.

Having disposed of these preliminary matters, I come to what seems to me to be the only real question in the case and that is: Did the mortgage, by its terms, secure the $700.00 note and the $500.00 note subsequently given by Easterling as against third parties without notice except that afforded by the records? It is well settled that a mortgage may be so drawn as to secure future advances and subsequent indebtedness. See the very recent case of *S. Behrmann v. Brown,* 122 S. C., ——; 113 S. E., 273. Such a mortgage is valid against subsequent creditors, in the absence of fraud. *Lawrence v. Tucker,* 23 How., 14; 16 L. Ed., 474, and note. This rule is qualified to the extent that advances made after notice, actual or constructive, of a subsequent lien or incumbrance will not take precedence over such subsequent lien or incumbrance. This principle is laid down in the case of *Norwood v. Norwood,* 36 S. C., 331; 15 S. E., 382; 31 Am. St. Rep., 875. In the case at bar, however, there was no subsequent lien or incumbrance. The fertilizer company merely took an unsecured note. At the time the cotton receipts were delivered to it all the notes given to the bank were past due.

Counsel for petitioner earnestly contends, however, that the language contained in the mortgage cannot properly be construed to cover subsequent indebtedness, but that the words used refer to other indebtedness subsisting at the time the mortgage was given; that "may be due" means "may now be due." While the words might be construed to cover subsisting indebtedness, it does not seem to me that they should be so qualified or limited. It appears that there was in fact no subsisting indebtedness, but, if there had been, presumably it was ascertainable, and a conditional phrase would hardly have been used if subsisting indebtedness alone was intended to be secured.

In my opinion the words "may be due," contemplate future indebtedness. The phrase has a prospective slant. The use of the word "due" does not necessarily imply that the debt has already matured. It is often used by business men in the sense of "owing irrespective of the time of payment." *Century Dictionary.* In the case of *Shoemaker v. Smith,* 37 Ind., 128, the Court says: "The words 'may be' are peculiarly appropriate to express the future and not the past." In the case of *Griggs v. St. Paul,* 56 Minn., 150; 57 N. W., 461, a contractor drew an order on the city for a certain sum of money, authorizing the deduction thereof "from any money which may be due me on account of the grading of Park Avenue." The Court held that the words "may be due" did not refer exclusively to what was presently due and payable at the date of the order, but also included moneys that might thereafter become due and payable under the contract. The Court said: "The word 'may,' as here used, implies contingency, possibility, or probability and is broad enough to include whatever might become due and payable." In *Brown v. Batchelor,* 1 H. & N., 264, a guaranty of "any balance that may be due" was construed as referring to future as well as to past transactions.

The purpose of construction is to ascertain from the four corners of the instrument itself the intention of the parties. The words used should be given their natural and ordinary meaning, as a general rule. Easterling testified, over objection, that it was not the intention of himself or Mr. McLaurin, the president of the bank, that the mortgage should cover future indebtedness. This testimony was obviously incompetent, and must be disregarded. The intention of the parties must be determined from the language of the instrument itself.

Considering an instrument with reference to the rights of third parties, who are required by law to take notice thereof, I think a fair test is: What would

a person of ordinary reason and judgment (that familiar standard of legal comparison) have concluded from the language of the instrument was the intent and meaning thereof? It seems to me that, tested by these principles, the mortgage must be held to secure the two notes subsequently given to the bank. I am not unmindful of the fact that the latter clauses of the mortgage make no explicit reference to such indebtedness, but I do not regard this as impairing the force and effect of the words construed as aforesaid, which are found in the mortgage just preceding the granting clause.

Counsel for petitioner in their brief refer to the fact that the $1.484.00 note very explicitly refers to subsequent indebtedness, but I have not considered this, because, so far as the fertilizer company is concerned, we cannot go outside of the mortgage as recorded.

For the reasons above stated, I hold that the mortgage secures all three of the notes given to the bank by Easterling, and that the receivers are entitled to the cotton in question as against the claim of the petitioner. It is, therefore, ordered that the petition be, and it is hereby, dismissed, with costs.

*Mr. J. W. LeGrand,* for appellant, cites: *Formation of contract:* 6 R. C. L., 599.

*Messrs. McColl & Stevenson,* for respondent, cite: *Notice from record of mortgage:* 72 S. C., 404; 104 S. C., 1; 88 S. C., 358; 22 Atl., 370; 31 Cyc., 822; Ann. Cas. 1916B, 233.

December 29, 1922.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The decree of the Circuit Court is affirmed for the reasons therein stated.